THE CITY OF NEW YORK, Respondent, *v.* DAVID LANDAU, Appellant.

Court of Special Sessions, City of New York, Appellate Part, Second Judicial Department, June 25, 1931.

*Louis Scadron,* for the appellant.

*Arthur J. W. Hilly, Corporation Counsel [Arthur H. Kerns* of counsel], for the respondent.

KERNOCHAN, J. This is an appeal from the Family Court of the City Magistrate's Court from a judgment adjudging the appellant a disorderly person and from an order ordering him to pay fifteen dollars per week for twelve months for the support of his wife and two children.

The complainant alleges that she and the appellant are husband

and wife, this the appellant denies and upon this point the validity of the judgment rests.

The fact of marriage, unless conceded, is all important in a case of this kind and the magistrate has the power to adjudicate the validity of a marriage for the purpose of a non-support proceeding such as the case now under consideration. (*People ex rel. Lichtenstein* v. *Hodgson*, 126 N. Y. 647.)

The complaining witness alleges a common-law marriage with the appellant in the city of New York in July, 1927; at that time she testifies that he came to live with her at her apartment, and at that time he said that she was to be known as Mrs. Landau, but that there was not to be any ceremony on account of religion. She also testified that the appellant lived with her in her apartment at 1927 Pacific street until the first child was born in May, 1928; that after she left the hospital they went to live together at 15 Crown street until September, 1928. After September, 1928, she no longer lived with the appellant but went to Shamokin, Pa., where her parents lived, and remained there until May, 1929. The appellant did not visit her when she was at Shamokin but she says that he called her on the telephone and sent her fifteen dollars in November, 1928. In May, 1929, she returned to New York and she says that the appellant gave her money until she got work in the city but gave her no more money after that. At this time the complainant lived for over a month at the house of a girl friend, and she then went to her sister, Mrs. Bird, where she was living up to the time of bringing this action. She testified that the appellant visited her frequently at Mrs. Bird's, that he never slept there but that they would frequently go to hotels for the night. During this period the appellant had intercourse with her and a second child was born December 8, 1930.

The complainant also testified, and her testimony is corroborated, that on a number of occasions she introduced the appellant to friends of hers as her husband and that he did not deny the fact. She admits, however, that never has the appellant introduced her to any one as his wife.

On this the complainant bases her claim to marriage. Some of this testimony is contradicted by the appellant. His father and brother testified that during the period between July, 1927, and September, 1928, when complainant said they were living together, the appellant was living at home with his family and was not absent from home for any considerable period during that time.

The testimony of Mrs. Bird, the complainant's sister, as to this period does not tend to support the contention of the complainant. She does say that she met the appellant as her brother-in-law.

But in answer to this question, " When did you see him after that?" she answered, " I just didn't see him. I called at the apartment and he was there and I didn't want to go in."

The evidence offered to show that they lived together as man and wife from July, 1927, until September, 1928, is far from satisfactory when the evidence of Mrs. Bird and of the appellant's brother and father are considered.

In corroboration of the complainant's testimony that she introduced the appellant as her husband and that he did not deny that fact a number of acquaintances of the complainant were called; but they were not well known to the appellant. The existence of a common-law marriage depends upon a contract between the parties and the fact that one is introduced as either husband or wife is only evidentiary. Judge NOTT in the Court of General Sessions in an opinion dated June 7, 1922, says: " The existence of a common-law marriage depends upon the contract between the parties, and the fact that a man holds out a woman as being his wife, is only evidence that that contract exists. To my mind it is evidence of the most weak and unsatisfactory character. Very few couples who are living in immoral relations are shameless enough to acknowledge that fact to decent people with whom they may be acquainted. In fact, it is undoubtedly the rule that those people who live in such relations invariably endeavor to deceive the people with whom they come in contact by assuming the guise of a married couple." (*People* v. *Howth*, Court of General Sessions, June 7, 1922.)

In *Graham* v. *Graham* (211 App. Div. 580), KELLY, P. J., writing for the Appellate Division, Second Department, says (at p. 583): " To constitute a common-law marriage there must be an agreement between the parties, a present consent, *per verba de præsenti*, to take each other as husband and wife, to enter into a relation which was to continue until death did them part, with the resulting obligations of husband and wife. This consent is of itself sufficient, *but for it there is no substitute or equivalent.* (2 Kent Com. 77; *Brinkley* v. *Brinkley*, 50 N. Y. 185; *Harbeck* v. *Harbeck*, 102 id. 714; *Foster* v. *Hawley*, 8 Hun, 68; *Smith* v. *Smith*, 194 App. Div. 543; *Bates* v. *Bates*, 7 Misc. 547, FREEDMAN, J.)

" In the absence of this intention and agreement, the facts of their sexual relations, that they lived together, that they used the same name, that they were regarded as husband and wife, do not supply the deficiency. Without this mutual *bona fide* intention and agreement there is no marriage at common law, under the statute (Dom. Rel. Law, § 10), or, for that matter, in the ecclesiastical law."

In *Matter of Seymour* (113 Misc. 421, at p. 423) Surrogate SLATER, of Westchester county, says: "To constitute a valid common-law marriage, at least two essentials must appear: (1) Mutual consent and capacity of the parties. (2) The agreement itself must be to become husband and wife *per verba de præsenti*," and also, in *Smith* v. *Smith* (194 App. Div. 543, at p. 548) Justice MERRELL said: "The two essentials of a common-law marriage are capacity and mutual consent. At common law the marriage relation may be formed by words of present assent, *per verba de præsenti*, and without the interposition of a clergyman or person lawfully authorized to perform the marriage ceremony. To constitute a marriage *per verba de præsenti*, the parties must be in each other's presence when the agreement is made."

In my opinion the statement attributed to the appellant by the complainant that she was to be known as Mrs. Landau but there was not to be any ceremony on account of religion was not an agreement to enter into marriage relations; nor does the testimony show that at any time was there any mutual consent between the parties to live as man and wife. I do not feel that the evidence in this case establishes the essentials necessary for a marriage and the judgment and order should, therefore, be reversed on the law and facts. And it is further

Ordered, that the complaint against said defendant be and the same hereby is dismissed, and the said defendant discharged.

MCINERNEY, P. J., and VOORHEES, J., concur.